United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 11, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-30572

TEAMSTERS LOCAL NO. 5,

Plaintiff-Appellee,

VERSUS

FORMOSA PLASTICS CORP., BATON ROUGE, LOUISIANA,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

This case arises out of a suit by Teamsters Local No. 5 to vacate the decision of an arbitrator interpreting its collective bargaining agreement with Formosa Plastics Corporation. The arbitrator had ruled that the collective bargaining agreement demonstrated that the parties intended for grievances to be filed within a reasonable time, and that the grievance at issue was untimely. The parties filed cross-motions for summary judgment, and the district court ordered vacatur of the arbitrator's decision.

BACKGROUND

Teamsters Local No. 5 ("Local 5") filed a grievance (the "Grievance") under its then-existing collective bargaining agreement (the "CBA") with Formosa Plastics Corporation ("Formosa"). It contended that eleven employees, who were transferred from unskilled "loader" classifications to skilled "operations" qualifications, were entitled to greater pay than they received after the transfers. The transfers occurred between March 8, 1999, and March 26, 2001, but Local 5 did not learn of facts it believed to warrant a grievance until September 13, 2001.

The CBA grievance procedure did not contain a specific time limit for filing grievances, although it did contain a strict mechanism and time frame for the processing of grievances. CBA §§ 40-41. It is undisputed that Local 5 does not receive, in the regular course of business, documents concerning wage payments, and discovered the information relating to the Grievance while investigating another matter. Local 5 filed its Grievance within five days after receiving sufficient information to do so.

The arbitrator, Elvis C. Stephens (the "Arbitrator"), who had jurisdiction under the CBA, rendered a written decision that concluded: (1) the language of the CBA demonstrated that the parties intended for grievances to be filed within a reasonable time; and (2) the instant Grievance was untimely because it was filed six months after the last employee changed classifications.

2

The Arbitrator did not reach the merits of the Grievance.

Local 5 filed this lawsuit to vacate the Arbitrator's decision, and both parties then filed cross-motions for summary judgment. The district court held that, while the parties intended for grievances to be filed within a reasonable time, this limitations period only begins to run from the time Local 5 or an employee has knowledge of the alleged CBA violation. The court thus granted Local 5's motion, vacated the Arbitrator's award, and remanded the case back to the Arbitrator for further proceedings. Formosa timely filed a notice of appeal.

While the parties diverge in their articulation of the question(s) presented, they do not dispute the district court's acceptance of the Arbitrator's interpretation of the CBA as requiring grievances to be filed within a reasonable time. The only issue before this Court, therefore, is whether the district court should be reversed for setting aside the Arbitrator's decision that the timeliness of the filing should be evaluated from the time of the alleged violation, rather than its discovery.

Local 5 argues that no "grievance" existed until there was an "expressed difference, dispute or controversy," between an employee (or Local 5) and Formosa. CBA § 40. Thus, according to Local 5, the Arbitrator ignored the plain language of the CBA in finding that the imputed limitations period began when the alleged violation occurred, rather than when Local 5 could express its grievance and initiate dispute resolution proceedings.

3

Formosa counters that, however wrong or unreasonable the Arbitrator's determination may have been (Formosa argues, of course, that it was neither), it drew its "essence" from the CBA, and did not go against any clear language in that contract. Formosa points out that though courts vacate awards wholly inconsistent with contractual language, courts are precluded from reviewing arbitrators' fact-finding. Formosa notes that Local 5's argument is basically that the Arbitrator improperly considered certain facts, notably the CBA language (which is silent as to limitations) and Local 5's lack of notice. According to Formosa, given the extreme deference owed arbitrators, there is no way that the application of a properly imputed limitations period could have "left the CBA behind." Moreover, while the CBA did not have a specific time limit for filing grievances, the parties clearly contemplated that grievances would be resolved promptly -- within a "reasonable time" as stated by the Arbitrator. It is "rationally inferrable" from this contemplation, Formosa contends, that the limitations period would commence upon the occurrence of the violation, rather than at any other particular time. Formosa concludes in the absence of specific contractual terms, therefore, the district court impermissibly substituted its own discernment of the parties' intent -- and its own evaluation of the equities involved -- for that of the Arbitrator.

## DISCUSSION

4

**Whether the district court erred in vacating the Arbitrator's decision on the ground that the limitations period for the instant grievance only began to run when Local 5 or an employee learned of the potential CBA violation.**

In an appeal from a grant of summary judgment in an action to vacate an arbitration award, we review the district court's ruling *de novo*. Weber Aircraft Inc. v. General Warehousemen & Helpers Union Local 767, 253 F.3d 821, 824 (5th Cir. 2001). A court must affirm an arbitral award if the arbitrator is "arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). If the arbitrator has not exceeded his authority, "the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotes and citation omitted).

Further, this Court has made clear that, a district court's review of an arbitrator decision is "extremely deferential." Nat'l Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union, 147 F.3d 399, 401 (5th Cir. 1998). When reviewing an arbitration award under the Labor-Management Relations Act, a district court is particularly constrained: "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not fashioning 'his own brand of industrial justice,' the award cannot be set aside." Weber, 253 F.3d at 824

(citing <u>Misco</u>, 484 U.S. at 36).[1]

Here, the Arbitrator interpreted CBA §§ 40-41, the sections that discuss grievance procedures, and inferred the parties' intention was that grievances be filed, processed, and resolved within a reasonable time. The Arbitrator was construing the CBA and acting within the scope of his authority. The Arbitrator's determination that the Grievance was not timely filed does not violate or change any of the language in CBA §§ 40-41. <u>See</u> <u>Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66</u>, 71 F.3d 179, 184 (5th Cir. 1995) ("If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning."). Likewise, although there is not language in CBA §§ 40-41 requiring that the Arbitrator find that any limitations period for filing a grievance begin to run when the grievance occurs and therefore this Grievance was not timely, this finding is inferrable from CBA §§ 40-41 which outlines the procedures for timely and prompt resolution of grievances. <u>See</u>

---

[1]Both <u>Weber</u> and <u>Misco</u> are grounded in the Supreme Court's well-settled standard for judicial review of arbitration awards, first established in the "<u>Steelworker Trilogy</u>" in 1960. <u>United Steelworkers of America v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593 (1960); <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574 (1960); <u>United Steelworkers of America v. American Mfg. Co.</u>, 363 U.S. 564 (1960). The essence of the <u>Steelworker Trilogy</u> is that, when the parties have agreed to submit all questions of contract interpretation to the arbitrator, courts are not to review the merits of the resulting award (or the equities of a claim), but must merely "ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract." <u>American Mfg. Co.</u>, 363 U.S. at 568.

Nat'l Gypsum, 147 F.3d at 402 ("Although the arbitrator's construction of the contractual provision may not be the only possible construction or even a correct one, it must nevertheless be upheld unless [it] . . . is not 'rationally inferrable' from the letter (or even the purpose) of the [CBA].") (citations omitted). Accordingly, the Arbitrator's interpretation of the CBA was not a radical departure from the terms of that document -- going so far beyond serious error -- as to warrant vacatur by the district court. Therefore, the decision of the district court must be reversed and the award reinstated.

## CONCLUSION

Having carefully reviewed the record in this case, the parties' respective briefing and arguments, for the reasons set forth above, we reverse the district court and reinstate the Arbitrator's award.

**REVERSED AND RENDERED.**