United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 21, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-21222
_____

KEN WIWA, Individually and as Executor of
the Estate of His Deceased Father, KEN
SARO-WIWA; OWENS WIWA; BLESSING
KPUINEN, Individually and as the
Administratrix of the Estate of Her
Husband, JOHN KPUINEN; JANE DOE,

Plaintiffs-Appellants,

versus

ROYAL DUTCH PETROLEUM COMPANY; SHELL
TRADING & TRANSPORT COMPANY, P.L.C.,

Defendant-Appellee,

VICTOR OTERI,

Appellee.

---------------------
Appeal from the United States District Court
for the Southern District of Texas
---------------------

Before REAVLEY, WIENER, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Esther Kiobel appeals the district court's

order denying her motion to compel attendance and to produce

documents and quashing the subpoena duces tecum directed to Victor

Oteri, a non-party to the underlying class action suit pending in

the United States District Court for the Southern District of New

York.  We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

This ancillary proceeding arises from a class action lawsuit pending in the United States District Court for the Southern District of New York in which Kiobel and others allege that the Royal Dutch Petroleum Company, Shell Trading and Transport Company, P.L.C., and Shell Petroleum Development Corporation of Nigeria, Inc. (collectively, "Shell") cooperated with and assisted the Nigerian military in the brutal repression of the Ogoni, a Nigerian ethnic minority.[1] The underlying complaint alleges that the Ogoni demanded that Shell adhere to proper environmental standards and pay compensation for environmental damages in relation to its oil exploration and production activities in Nigeria.  In response to the Ogoni's demands, the Nigerian military and police forces, allegedly supported and assisted by Shell, retaliated against the Ogoni by visiting a campaign of terror on them, which allegedly included launching armed attacks on their villages, subjecting the inhabitants to arbitrary arrest, confinement, and torture, and

---

[1] The underlying litigation is entitled Kiobel, et al. v. Royal Dutch Petroleum Co., et al. (02-CV-7618) (S.D.N.Y.).  The Southern District of New York consolidated this matter with Wiwa, et al. v. Royal Dutch Petroleum Co., et al. (96-CV-08386) (S.D.N.Y.).  Kiobel filed a motion in the district court to remedy the caption to reflect that only Kiobel appeals the district court's denial of the discovery motion. The district court denied the request.

executing leaders of the protest following proceedings in a military kangaroo court.

During discovery in the underlying litigation, Kiobel learned that a non-party witness, Victor Oteri, resides in Houston, Texas. Oteri served as the security coordinator for Shell's Nigerian subsidiary during the time alleged in the complaint. In the United States District Court for the Southern District of Texas, Kiobel sought, procured, and then served a subpoena duces tecum on Oteri in February 2003. The subpoena ordered Oteri to appear and to testify regarding Shell's alleged cooperation with the Nigerian government and military in the campaign against the Ogoni to thwart their peaceful protests against Shell's oil operations. The subpoena also ordered Oteri to produce at the deposition documents relevant to Kiobel's underlying claims.

Counsel for Kiobel and Oteri failed to agree on a date for Oteri's deposition or on the scope of the documents that Oteri was to produce at the deposition. Kiobel then issued a second subpoena in September 2003, which was identical to the first. This subpoena required Oteri to produce:

> [a]ny and all documents in your control, possession, or have access to [sic] pertaining to: your employment with the Shell Petroleum Development Company of Nigeria; any and all of your other business activities in Nigeria. including, but not limited [sic], all activities with the Nigerian Government, military, Nigerian Police, SPY Police and all other professional entities.

After communications between counsel for Kiobel and Oteri failed to produce any agreement on the scope of the subpoena or any possible

3

date for the deposition, Oteri filed objections to the subpoena duces tecum in the district court.

In response to Oteri's objections, Kiobel filed a Motion to Compel Attendance and Production of Documents in October 2003.  The district court treated Oteri's objections as a motion to quash, crediting the objections and quashing the subpoena.  The following month, the district court denied Kiobel's motion to compel based on the prior order that quashed the subpoena.  The court provided no explanation in either order — oral or written — as to why it quashed the subpoena or denied the motion to compel.  Kiobel timely filed her notice of appeal.

## II. ANALYSIS

### A.    Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction to review the discovery order that Kiobel appeals.  Subject to exceptions not relevant here, we have jurisdiction over only "final decisions" of a district court.[2]  In general, discovery orders do not constitute final decisions under Section 1291 and are not immediately appealable.[3]  And, we have held that discovery

---

[2] See 28 U.S.C. § 1291.

[3] See Church of Scientology v. United States, 506 U.S. 9, 18 n. 11 (1992).

4

orders generally are not appealable under the <u>Cohen</u> collateral order doctrine.[4]

In <u>A-Mark Auction Galleries, Inc. v. American Numismatic Ass'n</u>, we held that a district court order <u>granting</u> discovery directed at a non-party in a proceeding ancillary to the underlying litigation was not immediately appealable under Section 1291 or the collateral order doctrine.[5] In <u>A-Mark</u>, however, we "specifically reserve[d] for another day and another case the issue whether a decision <u>denying</u> discovery to a party seeking it would be appealable in circumstances such as those present in this case."[6]

Despite our reservation in <u>A-Mark</u>, we had previously held in <u>In re Rubin</u>[7] that we have jurisdiction over the denial of a discovery order directed to a non-party to an underlying lawsuit pending in another circuit. Tom Rubin was the subject of a bankruptcy proceeding pending in the United States Bankruptcy Court

---

[4] <u>See Texaco Inc. v. La. Land & Exploration Co.</u>, 995 F.2d 43, 44 (5th Cir. 1993). In this Circuit, under the <u>Cohen</u> collateral order doctrine, <u>see Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541 (1949), a party may immediately appeal a collateral order if it demonstrates that the order "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." <u>A-Mark Auction Galleries, Inc. v. American Numismatic Ass'n</u>, 233 F.3d 895, 897 (5th Cir. 2000).

[5] 233 F.3d at 898-99.

[6] <u>Id.</u> at 899 n. 2.

[7] 679 F.2d 29 (5th Cir. 1982).

for the Central District of California.[8]  He initiated discovery against KHTV-TV, Houston, Texas —— a non-party to the bankruptcy proceeding —— in the United States District Court for the Southern District of Texas.[9]  The district court denied the discovery motion, and Rubin appealed.[10]

We held that the denial of the discovery order was immediately appealable.[11]  In doing so, we stated that

> [i]t is true that normally the action by the district court on a discovery motion is interlocutory and not appealable.  But of importance in the circumstances of this case is the requirement of Rule 37(a)(1) . . . that the motion for discovery was required to be filed in the Southern District of Texas.  Since KHTV is not a party to the bankruptcy in California, the only way in which the order of the district court denying discovery can be appealed is to this Court.  If this appeal is dismissed there is no review of the district court order.  Under these circumstances, appeal from such an order should lie.
> We find that the denial of the discovery motion in this case is appealable.[12]

Rubin is directly applicable to the instant appeal.  Kiobel, like Rubin, is a party to underlying litigation pending in another circuit.  Oteri, like KHTV-TV, is a non-party to the underlying litigation to whom the party has directed discovery.  Rule 37(a)(1)

---

[8]  Id. at 30.

[9]  Id.

[10]  Id.

[11]  Id.

[12]  Id.

required Kiobel to seek her subpoena in the Texas district court.[13]
Both here and in Rubin, the district courts denied the discovery
requests.  Any appeal of the Texas district court's denial lies
only with this court.  We conclude that the denial of Kiobel's
discovery order is immediately appealable.[14]

Our holding is buttressed by an analysis of this interlocutory
appeal under the Cohen collateral order doctrine.  As noted, the
Cohen doctrine authorizes a party to appeal a collateral order
immediately by demonstrating that the order "(1) conclusively
determines the disputed question, (2) resolves an important issue
completely separate from the merits of the action, and (3) is

---

[13] Rule 37 provides that "[a]n application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be, taken." FED. R. CIV. P. 37(a)(1).

[14] Moreover, the other circuits that have ruled on this question are in unanimous agreement that a party may immediately appeal the denial of a discovery order directed at a non-party to underlying litigation pending in another circuit. See, e.g., Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 541 (4th Cir. 2004) ("We adopt the uniform position of the courts of appeals and hold that an order denying discovery from a nonparty in an ancillary proceeding where the underlying lawsuit is pending in another circuit is immediately appealable as a collateral order."); Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2, 197 F.3d 922, 925 (8th Cir. 1999) (same); Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998) (same); Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1320 (Fed. Cir. 1990) (same); Corp. of Lloyd's v. Lloyd's U.S., 831 F.2d 33, 34 (2d Cir. 1987) (same); CF & I Steel Corp. v. Mitsui & Co., 713 F.2d 494, 496 (9th Cir. 1983) (same); National Life Ins. Co. v. Hartford Accident & Indem. Co., 615 F.2d 595, 597 (3d Cir. 1980); In re Westinghouse Elec. Corp., 570 F.2d 899, 901 (10th Cir. 1978) (same).

effectively unreviewable on appeal from a final judgment."[15] An order denying discovery directed to a non-party to underlying litigation pending in another circuit "conclusively resolves the only issues before the district court — discovery issues affecting the nonparty — independent of the merits of the underlying lawsuit."[16] Further, "the party aggrieved by an order denying discovery from a nonparty outside the circuit in which the underlying lawsuit is pending would have no means of obtaining appellate review of that order absent immediate appeal."[17] Here, the Second Circuit will decide any appeal from the final judgment in the underlying class action lawsuit, and the Second Circuit has "no authority to upset a discovery order entered by a district court in this circuit."[18] The Cohen collateral order exception supports our jurisdiction here.

Oteri cites Texaco, In re Willy,[19] and In re Sessions[20] as supporting the proposition that we have no jurisdiction over this appeal because the district court's denial of Kiobel's motion to

---

[15] A-Mark Auction Galleries, 233 F.3d at 898-99.

[16] Nicholas, 373 F.3d at 542 (citing Cusumano, 162 F.3d at 712); National Life Ins. Co., 615 F.2d at 597.

[17] Id. (citing Miscellaneous Docket #1, 197 F.3d at 925; Micro Motion, 894 F.2d at 1320; Rubin, 679 F.2d at 30).

[18] Id.

[19] 831 F.2d 545 (5th Cir. 1987).

[20] 672 F.2d 564 (5th Cir. 1982).

compel is an interlocutory discovery order.  Oteri's reliance on these cases is misplaced.  Not one of these cases treats whether the denial of a discovery order directed to a non-party to underlying litigation is immediately appealable.  Texaco, for example, treated an appeal of the denial of a discovery order directed to a party to the underlying proceeding under the collateral doctrine exception.[21]  In Willy and Sessions, we denied mandamus petitions to parties who appealed the denial of a discovery motion directed at a party to the underlying proceedings.[22]

Oteri also seems to argue that we have no jurisdiction to entertain this appeal because Kiobel does not appeal the order quashing the subpoena, only the order denying the motion to compel. Oteri contends that the district court denied the motion to compel as moot because it had already quashed the subpoena.[23]  In sum, Oteri argues that Kiobel appeals the denial of a moot motion.  We reject this argument.  The motion to compel, which Kiobel appeals, is derivative of the subpoena that the district court quashed: Kiobel would not have had to file the motion to compel if Oteri had

---

[21] 995 F.2d at 43-44.

[22] Willy, 831 F.2d at 549; Sessions, 672 F.2d at 566-67.

[23] The district court's order denying the motion to compel reads, in full, "The court's October 10, 2003 order [quashing the subpoena] quashed all discovery — deposition and document production — concerning Victor Oteri.  The plaintiffs' motion to compel is denied."

complied with the subpoena. After the district court quashed the subpoena, the motion to compel was still outstanding because the district court failed to rule on it when it quashed the subpoena. Kiobel's appeal of the motion to compel —— which seeks to enforce Oteri's compliance with the subpoena —— is logically an appeal of the quashing of the underlying subpoena. Oteri's argument is meritless, and we hold under the authority of Rubin that we have jurisdiction over this appeal.

**B.   Motion to Compel**

### 1.   Standard of Review

We review the grant of a motion to quash a subpoena for abuse of discretion.[24] We review a district court's discovery rulings, including the denial of a motion to compel, for abuse of discretion.[25] We "will affirm such decisions unless they are arbitrary or clearly unreasonable."[26]

### 2.   Merits

Under Federal Rule of Civil Procedure 45, a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires

---

[24] Tiberi v. CIGNA Ins. Co., 40 F.3d 110, 112 (5th Cir. 1994).

[25] See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000).

[26] Id.

10

disclosure of privileged or protected matter; or (4) subjects a person to undue burden.[27] Oteri challenges Kiobel's subpoena on the fourth ground only, viz., that the subpoena is overbroad and subjects him to undue burden.

The moving party has the burden of proof[28] to demonstrate "that compliance with the subpoena would be 'unreasonable and oppressive.'"[29] "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation."[30] To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[31] Further, if the person to whom the document request is made is a

---

[27] See FED. R. CIV. P. 45(3)(A)(i)-(iv).

[28] See Williams v. City of Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citing Linder v. Dep't of Defense, 133 F.3d 17, 24 (D.C. Cir. 1984)).

[29] Id. (quoting Barnes Found. v. Township of Lower Merion, 1997 WL 169442, at *4 (E.D. Pa. Apr. 7, 1997) (quotations omitted)).

[30] Linder, 133 F.3d at 24 (quoting Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 407 (D.C. Cir. 1984)).

[31] Williams, 178 F.R.D. at 109 (quoting Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)).

11

non-party, the court may also consider the expense and inconvenience to the non-party.[32] A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.[33]

Generally, modification of a subpoena is preferable to quashing it outright.[34] In circumstances analogous to this situation — appellate review of a denial of a motion for abuse of discretion — we and other courts have held that a district court's denial of such a motion, unaccompanied by reasons — either written or oral — may constitute an abuse of discretion.[35] Here, the

---

[32] See id.; see also FED. R. CIV. P. 45(c)(2)(B) ("Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.").

[33] See id.

[34] See id. (citing Tiberi, 40 F.3d at 112); see also Linder v. Nat'l Sec. Agency, 94 F.3d 693, 698 (D.C. Cir. 1996) ("[M]odification of a subpoena is generally preferred to outright quashing . . . .").

[35] See East v. Scott, 55 F.3d 996, 1001 (5th Cir. 1995) (quoting Coleman v. Zant, 708 F.2d 541, 547 (11th Cir. 1983)) ("While the district court generally has discretion to grant or deny discovery requests under Rule 6 [of the Rules Governing Habeas Corpus Cases under Section 2254], a court's blanket denial of discovery is an abuse of discretion if discovery is 'indispensable to a fair, rounded, development of the material facts.'"); see also Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995) ("[T]he distric court . . . gave no reason for denying defendant's bill of costs. This was an abuse of the court's discretion."); Picon v. Morris, 933 F.2d 660, 663 (8th Cir. 1991) ("Against this need for relief under Rule 60(b)(6), the district court gave no reasons for its denial from which we can conclude that it did not abuse its discretion."); Twin City Constr. Co. v. Turtle Mountain Band of Chippewa Indians, 911 F.2d 137, 139 (8th Cir. 1990) (finding that district court's failure to articulate reasons for denial of Rule 59(e) motion indicative of abuse of

12

district court quashed the subpoena and denied the motion to compel outright without providing oral or written reasons for doing so.[36] Neither did the district court attempt to explain any deficiencies in either the subpoena or the motion so that Kiobel might have an opportunity to cure any defects. Nor did the district court attempt to modify the subpoena to cure any overbreadth; the district court even failed to set or hold a hearing on the breadth of the subpoena. There is no record evidence that the district court considered and applied the factors listed above to determine whether the subpoena is overbroad. We hold that this constitutes an abuse of discretion under the circumstances present here.

Having concluded that the district court abused its discretion when it quashed the subpoena and denied the motion to compel outright without giving any reasons whatsoever, we must now determine the appropriate remedy, which the parties dispute. Kiobel asserts that the proper remedy is to remand to the district court with instructions that it grant the motion to compel. In contrast, Oteri contends that the only proper remedy is a remand to the district court with instructions to provide this court with the

---

discretion); <u>Griggs v. Hinds Junior Coll.</u>, 563 F.2d 179, 180 (5th Cir. 1977) (holding that district court abused discretion when it gave no reasons for denying motion to amend <u>and</u> no prejudice shown to opposing party).

[36] The district court also quashed three other related subpoenas with no written or oral reasons.

13

reasons for which it denied the motion to compel and quashed the subpoena.

We find no case law —— and the parties have cited us to none —— that restricts our course of action when we conclude that the district court abused its discretion by failing to provide reasons for denying a motion to compel and quashing a subpoena. Section 2106 of the United States Code, however, aids our determination of the appropriate remedy here:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.[37]

Under this provision, we "ha[ve] the power to make such disposition of the case as justice may require."[38] Indeed, "'in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires.'"[39]

Section 2106 grants us broad power when it comes to how best to dispose of a matter under our review. Here, we are convinced that a remand to the district court for the provision of reasons

---

[37] 28 U.S.C. § 2106.

[38] Bank of China v. Wells Fargo Bank & Union Trust Co., 190 F.2d 1010, 1012 (9th Cir. 1951) (citing 28 U.S.C. § 2106)).

[39] In re Elmore, 382 F.2d 125, 127 (D.C. Cir. 1967) (citing Hormel v. Helvering, 312 U.S. 552, 558-59 (1941)).

14

would be an exercise in futility. Such a remand would unnecessarily prolong not only this dispute but the underlying litigation in the Southern District of New York as well. Considering the interests of judicial economy, the convenience to the parties, the likelihood of a subsequent appeal if the district court were to deny the discovery motion with reasons, and further delay of the underlying litigation in the Southern District of New York, we conclude that modification of the subpoena followed by a remand is appropriate here.

As noted above, the subpoena requests

[a]ny and all documents in your control, possession, or have access to [sic] pertaining to: your employment with the Shell Petroleum Development Company of Nigeria; any and all of your other business activities in Nigeria, including, but not limited [sic], all activities with the Nigerian Government, military, Nigerian Police, SPY Police and all other professional entities.

Oteri argues that (1) the subpoena seeks irrelevant information; (2) Kiobel does not need the information because she has already received Shell's documents; (3) the subpoena contains no specific time frame; (4) the period that the subpoena covers is enormous; and (5) Kiobel has refused to particularize and narrow her document request.[40]

---

[40] It is unclear whether Oteri also challenges the deposition that the subpoena ordered. In his appellate brief, Oteri's arguments do not contest the deposition. Oteri's objections to the subpoena in the district court concentrate specifically on the document request, although he does note that Kiobel "issue[d] an overbroad and unduly burdensome non-party subpoena for documents and <u>deposition testimony</u>." For purposes of this appeal, we assume that Oteri challenges the entire

15

Oteri first argues that the subpoena seeks irrelevant information. "Under the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged."[41] Discovery requests are relevant when they seek admissible evidence or evidence that is "'reasonably calculated to lead to the discovery of admissible evidence.'"[42] Whether Kiobel's discovery requests are relevant thus turns on whether they are "reasonably calculated" to lead to evidence admissible as to her claims against Shell.

Here, the basis of the underlying complaint is that Shell cooperated in the Nigerian government's campaign against the Ogoni. Oteri served as the security coordinator for Shell's Nigerian subsidiary during the time alleged in the complaint, and, indeed, the documents that Kiobel already possesses show that Oteri was involved in the purchase of arms and ammunition for Shell. The subpoena requests the documents that Oteri possesses, controls, or has access to that pertain to his employment with Shell. The subpoena further requests that Oteri produce all documents that relate to his "other business activities" in Nigeria, including

subpoena —— both the document request and the deposition.

[41] Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1086 (5th Cir. 1979) (citing FED. R. CIV. P. 26(b)(1)).

[42] McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting FED. R. CIV. P. 26(b)).

16

those with the Nigerian government, police, or military. The subpoena clearly requests information and documents that are relevant to Kiobel's complaint. As Shell's security coordinator, Oteri's knowledge of Shell's activities with the Nigerian government is relevant to the claims that Kiobel alleges in her complaint.

We find, however, that, as written, the subpoena's document request is overbroad. Oteri challenges the subpoena's request for all documents that relate to his dealings with the Nigerian government. Oteri has dealt with the Nigerian government for more than twenty years, even after he moved to the United States. This information clearly falls under the subpoena's request but is irrelevant to Kiobel's claim. Further, Oteri is correct in his assertion that the document request in the subpoena seeks personal information irrelevant to Kiobel's claim. For example, the subpoena, as worded now, encompasses personal information — such as Oteri's tax forms — that are irrelevant to Kiobel's claim. We therefore limit the substantive document request to corporate documents that (1) pertain solely to Oteri's position as security coordinator at Shell and (2) relate to Shell's alleged interactions with the Nigerian government and its treatment of the Ogoni.[43]

---

[43] Oteri also asks that we limit the geographic scope of the subpoena to "events occurring in Ogoniland" because Oteri worked at Shell's office in Lagos, Nigeria, and the subpoena encompasses documents in Lagos that do not concern the Ogoni. This we refuse to do. Merely because Oteri worked at the Lagos office does not by implication mean that his knowledge of or any documents that

Further, the subpoena requests all documents to which Oteri has "access."  Oteri contends that the term "access" is overbroad because Federal Rule of Civil Procedure 34 requires only the production of documents in the "possession, custody, or control" of the person to whom the subpoena is directed.[44]  Oteri argues that the term "access" encompasses documents that he does not have under his "possession, custody, or control."  We agree.  The phrase "to which he has access" is overbroad; it would require the retrieval of documents from Nigeria —— documents not under Oteri's custody, control, or possession, but to which he could conceivably have access by virtue of his prior position with Shell.  We therefore limit the document request in the subpoena to documents within Oteri's custody, control, or possession.

We also limit the temporal scope of the subpoena.  Kiobel maintains that she requests only "documents concerning Mr. Oteri's contacts with the Nigerian government and military during a specific time period."  Although the absence of a time frame in the subpoena belies Kiobel's contention, she notes that in her letter dated May 23 —— part of an exchange between counsel in an effort to particularize the subpoena request —— she "specifically referenced

---

he may have that relate to Shell's interactions with the Nigerian government occurred solely in Ogoniland.  For example, a purchase of weapons and ammunition that did not occur in Ogoniland could relate to Kiobel's claims even though the negotiations for the weapons and their purchase did not occur there.

[44] FED. R. CIV. P. 34(b).

Mr. Oteri's knowledge derived from his position as 'security coordinator' for Shell in Nigeria during the relevant period of the Complaint and his knowledge regarding Shell's complicity with the Nigerian government and military."[45] Accordingly, we limit the document request to the period alleged in Kiobel's complaint and to the information described in the May 23 letter. We are satisfied that these modifications remedy the overbreadth of the subpoena's document request.[46]

Oteri presents two further arguments that merit our attention. He contends that —— pursuant to discussions between counsel for the parties —— Kiobel knew that the subpoena was overbroad and failed to particularize it. In essence, Oteri argues that the district court was justified in quashing the subpoena because Kiobel failed to narrow it sua sponte. We reject this argument. Oteri has cited no law to support the proposition that a plaintiff must attempt to particularize or narrow a subpoena during out-of-court discussions with opposing counsel. Further, Kiobel's May 23 letter to opposing counsel, in which she attempted to clarify her position and to

---

[45] In the May 23 letter, counsel for Kiobel specified that Kiobel is "interested in [Oteri's] knowledge of [Shell's] interactions with the Nigerian government and military and of the events alleged in the complaint."

[46] See, e.g., Williams, 178 F.R.D. at 110-11 (modifying subpoena to reflect plaintiff's narrower scope as contended in plaintiff's brief).
It goes without saying that any limitations that we impose on the subpoena's document request also apply to Oteri's testimony at the deposition.

narrow the scope of the subpoena, belies Oteri's argument that Kiobel made no effort to narrow her request.

Oteri also asserts that this discovery issue is moot, observing that Kiobel's counsel has represented to the New York district court that discovery in the underlying litigation closed on May 31, 2004. Oteri contends that Kiobel has failed to demonstrate that any information that Oteri produces in response to the subpoena will be admitted in the underlying litigation. Kiobel counters that, although merits discovery has ended, there are many discovery issues that the New York district court has yet to resolve, including this one. Kiobel states that the New York district court is aware of this appeal.

We point out first that — conclusional allegations aside — neither party has provided us with evidence that the District Court for the Southern District of New York will include or exclude this evidence even though the merits discovery deadline has passed. Kiobel had the first and second subpoenas served on Oteri well before the merits discovery deadline. The second, the one that is the subject of this appeal, was served on September 8, 2003. It is not uncommon for a district court to admit evidence — even after the discovery deadline — obtained through properly- and timely-served discovery requests. We reject Oteri's arguments.

## III. CONCLUSION

20

We reverse the district court's quashing of the subpoena and its denial of the motion to compel, and we modify Kiobel's subpoena by its breadth as outlined above. Accordingly, we remand this matter to the district court for continued proceedings consistent with the modified subpoena and not inconsistent with this opinion. ORDERS REVERSED; SUBPOENA MODIFIED; CASE REMANDED for further consistent proceedings.