**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 23, 2011

No. 08-10730

Lyle W. Cayce
Clerk

VOLANDA WOODS,

Plaintiff–Appellee,

v.

PAM TRANSPORT INC-LU,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:07-CV-605

Before OWEN and HAYNES, Circuit Judges.[*]

PER CURIAM:[**]

Volanda Woods initiated this action in the district court seeking enforcement of an arbitration award she obtained against her former employer, P.A.M. Transport, Inc.-L.U. (P.A.M.), on claims arising out of an on-the-job injury. Woods initiated the arbitration proceedings and sought compensation pursuant to the P.A.M. Transport Texas Injury Plan (Plan), an ERISA plan that

---

[*] This case is being decided by quorum due to the death of Judge William L. Garwood on July 14, 2011. 28 U.S.C. § 46(d).

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-10730

provides for mandatory arbitration of all on-the-job injury claims.  The district court granted Woods's request for enforcement of the arbitration award after modifying the award of pre-judgment interest.  P.A.M. appeals several aspects of the district court's order.  We affirm in part, reverse in part, and remand for further proceedings.

## I

P.A.M. initially contended that this court lacked subject matter jurisdiction, asserting that there was no diversity of citizenship, the only basis on which Woods now asserts jurisdiction.  P.A.M. has since conceded that there is diversity of citizenship, and we granted leave to amend to reflect that fact.[1]

In the district court, P.A.M. sought to void the arbitrator's award, challenging the arbitrator's power to decide the parties' underlying dispute.  P.A.M. asserts that the district court abused its discretion in denying its request for discovery from the American Arbitration Association (AAA) for the purpose of determining when and for what reason the arbitrator was allegedly removed from the AAA's Roster of Neutrals (Roster).  P.A.M. alleges that the arbitrator was removed from the Roster sometime after the arbitration proceedings concluded but before the arbitrator entered the award.  P.A.M. further asserts that if the arbitrator was in fact not on the Roster at this time, he exceeded his powers under the Plan, requiring vacatur of the award pursuant to 9 U.S.C. § 10(a)(4).

The district court denied P.A.M.'s discovery request, stating that P.A.M.'s assertion that the arbitrator was removed from the Roster alone, without any additional specifics, was not sufficient to support its discovery request and that, in any event, P.A.M. had not demonstrated that the arbitrator's removal from the Roster would provide sufficient grounds for vacatur.

---

[1] *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

No. 08-10730

We review a district court's discovery rulings for abuse of discretion[2] and "will affirm such decisions unless they are arbitrary or clearly unreasonable."[3] "The party seeking discovery bears the burden of showing its necessity."[4]

In district court, P.A.M. consistently asserted, on information and belief, that the arbitrator was removed from the Roster prior to entering the award. But, P.A.M. does not provide any additional specifics beyond this assertion. In particular, although acknowledging that the Roster is not publicly available and alleging that the AAA refused to provide P.A.M. with information concerning the Roster, P.A.M. has not provided even the vaguest indication in district court or on appeal of how it may have learned that the arbitrator was in fact removed from the Roster. "Despite having been given time to do so, [P.A.M.] has brought forward nothing to show that its claim [that the arbitrator was not on the Roster when he entered the award] had any semblance of substance or that it was even asserted in good faith. The claim never achieved any more dignity than that of a conclusory statement in an unverified answer [and other court memoranda]."[5]

Moreover, although P.A.M. argued this issue from the inception of these proceedings, the record indicates that it did not move for discovery until all the party documents were filed (including Woods's response and P.A.M.'s reply), even though the parties previously jointly moved to extend certain deadlines specifically in order to allow P.A.M. to seek discovery of the matter. "The loser

---

[2] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004).

[3] *Id.* (internal quotation marks omitted).

[4] *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009).

[5] *See Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 337 (5th Cir. 1976) (stating that a party seeking vacatur of an arbitration award based on allegations of a disqualifying connection between the opposing party and the arbitrator does not have an "unqualified right to any discovery it requested, limited by only relevancy," particularly in a summary proceeding where the party had failed to "come forward with anything tending to show that the claim was asserted in good faith and for any reason other than delay").

3

No. 08-10730

in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery."[6]  In light of P.A.M.'s inability to produce any information, however vague, substantiating its assertion, its unexplained delay in seeking discovery, and the summary nature of proceedings to confirm an arbitration award, we decline to conclude that the district court abused its discretion in denying P.A.M.'s discovery request,[7] particularly considering the strong policy favoring expeditious enforcement of arbitration awards.[8]

## II

P.A.M. also contests the amount of the district court's award of pre- and post-judgment interest.  We agree that the district court erred in its calculation of both pre- and post-judgment interest and reverse that portion of the judgment.

## A

The arbitrator's written decision awards damages by category, including compensation for past and future medical expenses, mental anguish, pain and suffering, physical impairment, and lost earning capacity.  It further provides for an award of "prejudgment interest for past pain and suffering under section 304, Subchapter B, of the Texas Finance Code, which authorizes prejudgment interest in personal injury cases."  In confirming the award, however, the district court awarded pre-judgment interest on all "past damages

---

[6] *Id.*

[7] *See Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir. 1991) (stating that the district court did not err in observing that the discovery requests aimed at the AAA were attempts to "engag[e] in a fishing expedition in an attempt to determine if there is some basis, however farfetched, to prosecute a claim of bias"); *see also Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) ("The party seeking discovery bears the burden of showing its necessity.").

[8] *Positive Software Solutions v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc) ("To assure that arbitration serves as an efficient and cost-effective alternative to litigation, and to hold parties to their agreements to arbitrate, the FAA narrowly restricts judicial review of arbitrator's awards.").

No. 08-10730

awarded" rather than only on the amount attributable to past pain and suffering.

P.A.M. argues that the district court was required to enforce the arbitrator's award as written and therefore erred in its pre-judgment interest calculation. Woods, on the other hand, argues that under the provision of Texas law cited by the arbitrator, an award of pre-judgment interest in personal injury actions must be awarded as a matter of course on the entire amount of damages for past injury, not just pain and suffering. Woods asserts a number of grounds on which she claims the district court was authorized to correct this error.

Woods first argues that the district court had the authority to correct the arbitrator's alleged error under 9 U.S.C. § 13, which provides that a judgment affirming, modifying, or correcting an arbitration award has "the same force and effect" as, and is "subject to all the provisions of law relating to, a judgment in an action," and "may be enforced as if it had been rendered in an action in the court in which it is entered."[9] Woods contends this provision authorizes the district court "to enter a judgment that complies with [the] law, as if the judgment had been rendered by that court, and not an arbitrator." This argument is unpersuasive. Under Woods's broad interpretation of § 13, a district court would be authorized to correct any legal errors committed by the arbitrator. But it is well settled that the district court lacks this authority; its review of arbitration awards is "'extraordinarily narrow,'"[10] and an arbitration award is not subject to vacatur or modification merely because of the arbitrator's error or misunderstanding with respect to the law.[11] Section 13 merely provides

_____

[9] 9 U.S.C. § 13(c).

[10] *Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 792 (5th Cir. 2002) (quoting *Antwine v. Prudential Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)).

[11] *See Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584–86 (2008) (holding that 9 U.S.C. §§ 10 and 11 provide the exclusive grounds upon which an arbitration award may be

that a judgment enforcing an arbitration award has the same effect as any other district court judgment; it does not independently authorize the district court to correct an arbitrator's erroneous legal ruling.

Alternatively, Woods argues that the district court properly refused to affirm the arbitrator's award of pre-judgment interest because the arbitrator manifestly disregarded the law. This court previously recognized "manifest disregard for the law" as an additional, nonstatutory basis for vacating an arbitrator's award.[12] However, in light of the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*,[13] which "restricts the grounds for vacatur to those set forth in § 10 of the [FAA]," we have concluded that "manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA."[14] Moreover, we have never explicitly held that "manifest disregard for the law" could provide an additional ground for modification of an award, and even if we had, *Hall Street* restricts the grounds for modification of an award to § 11 of the FAA, just as it restricts the grounds for vacatur to those set forth in § 10.[15] Thus, under *Hall Street* and *Bacon*, "manifest disregard for the law" is not an independent ground for either vacating or modifying arbitration awards under the FAA.

Finally, Woods argues that the district court acted properly in modifying the arbitrator's award of pre-judgment interest under 9 U.S.C. § 11(a) and (c),

---

vacated or modified, and that the parties may not agree to expand the scope of judicial review to allow vacatur or modification based on the arbitrator's legal error).

[12] *See Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003) (quoting *Harris*, 286 F.3d at 792).

[13] 552 U.S. at 584-86.

[14] *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009) (citing *Hall Street Assocs.*, 552 U.S. at 584).

[15] *Hall Street Assocs.*, 552 U.S. at 584, 586.

which allow for modification or correction where (1) "there was an evident material miscalculation of figures,"[16] or (2) "the award is imperfect in matter of form not affecting the merits of the controversy."[17]  Both contentions lack merit. First, we have held that "an 'evident material [mis]calculation' occurs 'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.'"[18]  The award in this case does not contain a material miscalculation under this standard, irrespective of whether the arbitrator committed a legal error.  Second, the award of pre-judgment interest is not merely a matter of form, but goes to the merits of the controversy.[19]

For the reasons discussed above, the district court erred in modifying the arbitrator's award of pre-judgment interest on past pain and suffering.

## B

The arbitrator summarily awarded post-judgment interest "at the maximum rate allowed by law beginning from the issuance of this Award until the Award is satisfied."  Accordingly, the arbitrator largely left the matter of post-judgment interest to the court enforcing the award.  In turn, the district court awarded post-judgment interest at the maximum rate allowed by Texas state law, or 7.25%.

P.A.M. argues that the district court erred in looking to Texas law rather than federal law to determine the applicable interest rate.  As noted above,

---

[16] 9 U.S.C. § 11(a).

[17] *Id.* § 11(c).

[18] *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 396 (5th Cir. 2003) (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir. 1993)).

[19] *See West Virginia v. United States*, 479 U.S. 305, 310 (1987) ("Prejudgment interest is an element of complete compensation." (citation omitted)).

No. 08-10730

under 9 U.S.C. § 13, a judgment of a federal court confirming, modifying, or correcting an arbitration award has the "the same force and effect" as, and is "subject to all the provisions of law relating to, a judgment in an action," and "may be enforced as if it had been rendered in an action in the court in which it is entered."[20] Unlike with pre-judgment interest, the post-judgment interest rate for *all* judgments entered in federal courts, including those in diversity cases, is governed by 28 U.S.C. § 1961.[21] Pursuant to that statute, the post-judgment interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."[22] In this case, the district court's judgment was entered on February 19, 2008, and the applicable rate appears to be 2.04%,[23] though we leave this to the district court to determine in the first instance.

Accordingly, the district court erred in applying Texas law to calculate post-judgment interest. On remand, the district court should recalculate the amount utilizing the appropriate rate.

**⁎ ⁎ ⁎**

The district court's judgment is REVERSED IN PART, and this matter is REMANDED for further proceedings consistent with this opinion.

---

[20] 9 U.S.C. § 13(c).

[21] *Travelers Ins. Co. v. Liljeberg Enters, Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993); *see also Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984) (stating that "a district court judgment affirming an arbitration award is governed by statutory post-judgment interest rates").

[22] 28 U.S.C. § 1961(a).

[23] Board of Governors of the Fed. Reserve Sys., Market Yield on U.S. Treasury Securities at 1-year Constant Maturity, Quoted on Investment Basis, http://federalreserve.gov/releases/h15/data.htm (last updated Apr. 13, 2011).

8

No. 08-10730

PRISCILLA R. OWEN, Circuit Judge, concurring:

I fully join the panel quorum's opinion and judgment. I write further only to set forth an additional basis for affirming the district court's decision to enforce the arbitrator's award, with the exception of the district court's determinations regarding the pre- and post-judgment interest issues.

Even if P.A.M. could demonstrate conclusively that the arbitrator was removed from the AAA's Roster before the final award was entered, P.A.M. would not be entitled to vacatur on that basis. Under 9 U.S.C. § 10(a)(4), an arbitration award may be vacated "where the arbitrators exceeded their powers."

"Arbitration is a matter of contract: The powers of an arbitrator are dependent on the provisions under which the arbitrators were appointed."[1] "Where arbitrators act 'contrary to express contractual provisions,' they have exceeded their powers."[2] "If the contract creates a plain limitation on the authority of an arbitrator, [this court] will vacate an award that ignores the limitation."[3] "Where limitations on the arbitrator's authority are uncertain or ambiguous, however, 'they will be construed narrowly.'"[4] As "the FAA narrowly restricts judicial review of arbitrators' awards,"[5] "[a] reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of

---

[1] *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Brook v. Peak Int'l*, 294 F.3d 668, 672 (5th Cir. 2002)).

[2] *Id.* (quoting *Delta Queen Steamboat Co. v. AFL-CIO*, 889 F.2d 599, 604 (5th Cir. 1989)).

[3] *Id.*

[4] *Id.* at 402 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004)).

[5] *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc).

9

arbitration."[6] The award should be confirmed if the arbitrator is arguably acting within the scope of his authority.[7]

The Plan requires that the arbitration be "administered by the [AAA] under its then-current National Rules for the Resolution of Employment Disputes . . . before an arbitrator from the [AAA]." It is at best ambiguous whether this language requires that an arbitrator who was on the Roster throughout the duration of the arbitration proceedings also be on the Roster at the time he enters the award. The plain terms require merely that the arbitration be administered by an arbitrator from the AAA.

The meaning of the phrase "an arbitrator from the [AAA]" does not clearly require that an arbitrator selected from the Roster remain on that Roster until after the arbitrator's decision is issued. The phrase could reasonably be interpreted to require that the arbitrator be selected pursuant to the AAA's rules. It is far from clear that this provision states a limitation on the authority of the arbitrator in the unexpected event that he is removed from the Roster after the arbitration proceedings have concluded.[8]

Even if P.A.M. is correct that "an arbitrator from the [AAA]" specifies ongoing qualification requirements rather than a selection method, it has still failed to demonstrate that "an arbitrator from the [AAA]" means exclusively an

---

[6] *Apache Bohai*, 480 F.3d at 402 (quoting *Action Indus.*, 358 F.3d at 343).

[7] *Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004).

[8] *See Zeiler v. Deitsch*, 500 F.3d 157, 166–167 (2d Cir. 2007) (concluding that an arbitration agreement that specifically listed three arbitrators who were to compose the arbitration panel did not "state a limitation on the authority of the panel to continue in the unexpected event that one of the members might resign"); *but see El Vocero De Puerto Rico v. Union De Periodistas*, 532 F. Supp. 13, 14–16 (D.P.R. 1981) (concluding, after considering extrinsic evidence to ascertain the parties' intent, that the parties agreed that the arbitrator be an employee of the Conciliation and Arbitration Bureau and that this presupposed that the requirement be maintained at all pertinent times because it would be illogical to insist on this matter at the time of selection but not at "such important occasions as when [the arbitrator] weighs the evidence, makes up his mind and issues his award").

arbitrator listed on the Roster.  The phrase could also be understood to require that the arbitrator's continued assignment to this particular arbitration be sanctioned by the AAA, and P.A.M. has presented no evidence that removal from the Roster automatically means that the AAA no longer sanctions the arbitrator's continued service on previously appointed panels.[9]  In fact, the AAA's Roster management practices indicate that the Roster is primarily used for future arbitration assignments.  The AAA rotates arbitrators off the Roster regularly for a variety of reasons,[10] some of which have nothing to do with the particular arbitrator but rather respond to regional needs or involve the need for arbitrators with a focus in a particular area of law.

The Plan expressly incorporates the rules of the AAA.  This court has previously held, in addressing an arbitrator's qualification under NASD rules, that "[i]n the absence of a specific agreement to the contrary, determining [an arbitrator's] qualifications and eligibility is a matter left to the NASD."[11]  The AAA's Rules provide that disqualification decisions are at its discretion.[12]

---

[9] *See United Transp. Union v. Gateway W. Ry. Co.*, 284 F.3d 710, 713 (7th Cir. 2002) (suggesting that the National Mediation Board could remove an arbitrator from its Roster while not removing him from any existing panels).

[10] According to the AAA, an arbitrator may be removed for various reasons, including: (1) career change requiring resignation; (2) failure to meet all training requirements; (3) unsuccessful participation or performance in training programs; (4) a dearth of cases in the arbitrator's area of expertise or geographical location; (5) unprofessional conduct; (6) failure to make appropriate and sufficient disclosures on a case; (7) failure to manage the arbitration process effectively and efficiently; (8) higher fees or inconsistent billing practices; and (9) failure to act in accordance with AAA Rules and procedures.  India Johnson, *Reality vs. Myth: The Truth About Management of the AAA Commercial Roster* (March 2003), http://www.adr.org/si.asp?id=3523.

[11] *Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 626 (5th Cir. 2006).

[12] *See* American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, Rule 16(b) (July 1, 2006), http://www.adr.org/sp.asp?id=36105 ("Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.").

11

No. 08-10730

Because the Plan does not clearly speak to this specific situation, the AAA's Rules are relevant.[13]   Under the AAA's Rule 12(b), the arbitrator must be qualified when designated.[14]   Rule 16, in turn, lists the grounds for disqualification, which include: (1) partiality or lack of independence; (2) inability to perform duties with diligence and in good faith; and (3) any other grounds provided by applicable law.[15]   Notably, removal from the Roster alone is not an available ground for disqualification of a previously appointed arbitrator.  Accordingly, P.A.M. has not demonstrated that the arbitrator was not sanctioned by or "from the [AAA]" at the time he entered the award, even if he was removed from the Roster.  The AAA's refusal to rule on the matter further supports this conclusion.

---

[13] *Id.* Rule 1 ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . .").

[14] *Id.* Rule 12(b).

[15] *Id.* Rule 16(a).