Sarah BOUNDS

v.

**CAPITAL AREA FAMILY VIOLENCE INTERVENTION CENTER, INC. d/b/a Iris Domestic Violence Center of Baton Rouge and Audrey Wascome**

**CIVIL ACTION NO. 14–802–JJB–RLB**

United States District Court,
M.D. Louisiana.

Filed 03/21/2016

Signed March 18, 2016

Robert B. Landry, III, Robert B. Landry III, PLC, Baton Rouge, LA, James L. Arruebarrena, New Orleans, LA, for Sarah Bounds.

Mark E. Young, Lauren B. Dietzen, Plauche' Maselli Parkerson LLP, New Orleans, LA, for Capital Area Family Violence Intervention Center, Inc. d/b/a Iris Domestic Violence Center of Baton Rouge and Audrey Wascome.

## ORDER

RICHARD L. BOURGEOIS, JR.,
UNITED STATES MAGISTRATE JUDGE

Before the court is Plaintiff's Motion to Compel Subpoena *Duces Tecum* Production (R. Doc. 38) filed on January 26, 2016. The motion is opposed. (R. Doc. 40). Plaintiff has filed a supplemental memorandum providing deposition testimony. (R. Doc. 51).

Also before the court is Defendant's Motion to Modify Subpoena *Duces Tecum* and for Protective Order (R. Doc. 39) filed on February 1, 2016. The motion is opposed. (R. Doc. 43).

The court's Scheduling Order set non-expert discovery to close on February 12, 2016 and expert discovery to close on March 31, 2016. The instant motions were timely filed.

## I. Background

In her Amended Complaint, Sarah Bounds ("Plaintiff") alleges that she was an employee of defendant Capital Area Family Violence Intervention Center, Inc. d/b/a Iris Domestic Violence Center of Baton Rouge ("Iris"). (R. Doc. 10, "Am.Compl."). Plaintiff was six months pregnant when she was hired in August of 2013 by Judy Benitez, Iris's former Executive Director and Plaintiff's former direct supervisor. (Am.Compl., ¶ 7). Plaintiff began work on September 3, 2013. (Am.

Compl., ¶ 8). Plaintiff alleges that Danna Leblanc, an Iris Board member and President, began micromanaging her work and was critical of Benitez's decision to hire Plaintiff because Plaintiff was "too distracted by pregnancy to be a good worker." (Am. Compl., ¶¶ 10–11).

Plaintiff went on six weeks of maternity leave from November 27, 2013 through January 13, 2015, and was paid for work performed while on maternity leave. (Am. Compl., ¶¶ 12–15). Plaintiff alleges that she developed symptoms of post-partum depression and sought the help of a therapist. (Am.Compl., ¶ 15). Plaintiff claims that she informed defendant Audrey Wascome, an Iris board member and Vice President, of her post-partum depression in February of 2014. (Am.Compl., ¶ 16). Plaintiff further alleges that Heather Folks, an Iris volunteer and Iris Board member, was critical of Benitez for allowing Plaintiff to take "paid" maternity leave. (Am.Compl., ¶ 17).

In May of 2014, Plaintiff became "a domestic violence client of Iris, having experienced domestic violence from her spouse." (Am. Compl., ¶ 23). Plaintiff alleges that Juanita McCray was the nonresidential client advocate who took over Plaintiff's case and allegedly told Plaintiff that only the two of them would have access to Plaintiff's domestic violence file. (Am.Compl., ¶ 23).

On September 25, 2014, Plaintiff had a nightmare about her husband that she discussed with her co-worker Connie Falcon, a legal assistant, who subsequently reported these discussions to McCray. (Am.Compl., ¶¶ 31–34). Plaintiff alleges that McCray, along with Koreen Scott, another domestic violence advocate, then asked Plaintiff if she would like to stay in a hotel away from her spouse in light of her domestic violence claims. (Am.Compl., ¶ 34). After meeting her husband for lunch, Plaintiff was summoned back to the office by Kim Wells, Iris's Director of Outreach. (Am.Compl., ¶ 35). Upon returning to work, Plaintiff was taken into custody by East Baton Rouge Parish sheriff's deputies, who showed her an Order of Protective Custody ("OPC") signed by the coroner and an attached affidavit written out

by Falcon. (Am.Compl., ¶¶ 37–38). Plaintiff alleges that Falcon's affidavit states that Plaintiff "was homicidal and suicidal that day, that she indicated she felt like hurting herself, and that she hoped to make her husband kill her." (Am.Compl., ¶ 39). Plaintiff further alleges that defendant Wascome was responsible for conveying this information to the coroner to obtain the OPC. (Am.Compl., ¶ 41).

Upon returning home from protective custody, Plaintiff received a letter from Leblanc stating that Plaintiff had been placed on administrative leave until October 10, 2014 in light of the incident. (Am.Compl., ¶ 67). Plaintiff further alleges that representatives of Iris subsequently "contacted Baton Rouge police and made a criminal complaint of [Plaintiff] allegedly preparing and issuing requested emergency financial assistance checks to Iris's client abuse survivors without [Plaintiff] having authority to do so." (Am. Compl., ¶ 92).

Plaintiff asserts that she was discriminated and retaliated against in light of her disability of depression in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (the "Rehabilitation Act"). (Am.Compl., ¶¶ 93–99, 102–103). Plaintiff also asserts pregnancy and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). (Am.Compl., ¶¶ 100–101, 103). Finally, Plaintiff alleges claims for defamation and abuse of process under Louisiana tort law. (Am.Compl., ¶¶ 104–105).

On December 29, 2015, Plaintiff served a Rule 45 subpoena on Leblanc's employer, Air Products and Chemicals, Inc. ("Air Products"), seeking, in pertinent part, the following information:

1. All emails, whether sent or received by Danna Leblanc ... through her Air Products email address(es) ... for the time period May 1, 2014 to October 12, 2014, and pertaining to or in any way relating to [Iris] and "Sarah," "Bounds," "Director of Operations," "Judy," "Benitez," or "Executive Director."

2. All emails, whether sent or received from Danna Leblanc at her Air Products email address(es) ... for the time period September 1, 2014 to October 12, 2014, to or from the following email accounts of Iris Board members: [certain specific email addresses for Wascome, Folks, and Jude Melville].

(R. Doc. 38–2 at 5). The subpoena further states that it "does not seek production of any emails that pertain to Air Products' Business or Operations." (R. Doc. 38–2 at 5). The subpoena sought compliance in Baton Rouge on or before January 14, 2016. (R. Doc. 38–2 at 1).[1]

On January 12, 2016, Air Products objected to the subpoena on the bases that it is burdensome, overly broad, and seeks documents containing confidential and proprietary information. (R. Doc. 38–4).

On January 12, 2016, Plaintiff's counsel and defense counsel discussed the subpoena. (R. Doc. 38–5). Defense counsel summarized Defendants' requests to modify the manner of production in response to the subpoena as follows: (1) Air Products would first provide responsive documents to defense counsel; (2) defense counsel would review the responsive documents and produce only records that refer to Plaintiff; and (3) Defendants would only produce information deemed confidential if an addendum to the Protective Order already in place referred to the new documents. (R. Doc. 38–5).

On January 13, 2016, Plaintiff's counsel agreed to the first request so long as Air Products would provide Plaintiff a total count of emails produced to defense counsel. (R. Doc 38–6 at 1). Plaintiff's counsel further agreed that defense counsel could review the documents for confidentiality and privilege, noting that a privilege log must be produced in accordance with Local Rule 26(c). (R. Doc 38–6 at 1). Plaintiff's counsel did not, however, agree that the production could exclude Leblanc's emails referring to Benitez, which Plaintiff claimed were relevant. (R. Doc. 38–6 at 1). Plaintiff's counsel offered to limit

---

1. The subpoena has a typographical error requesting compliance by January 14, 2015.

the scope of Leblanc's emails referring to Benitez to her work performance, termination, and complaints about her from May 1, 2014 up to her last day of employment, September 10, 2014. (R. Doc. 38–6 at 1–2). Finally, Plaintiff's counsel noted that although he believed Defendants' confidentiality concerns were protected pursuant to the current Protective Order (R. Doc. 29), he did not oppose the addition of an addendum to the Protective Order governing confidential information in emails responsive to the subpoena. (R. Doc. 38–6 at 2).

On January 21, 2016, Plaintiff's counsel agreed to limit Leblanc's emails regarding Benitez to "failure to hold staff accountable" emails, and agreed that any remaining emails concerning Benitez's performance and termination could be put on the privilege log. (R. Doc. 38–7).

On January 26, 2016, at 12:29 p.m., defense counsel agreed to the scope of production as suggested by Plaintiff's counsel. (R. Doc. 39–4 at 14–15). Defense counsel clarified that to the extent other Iris staff members are named in "failure to hold staff accountable" emails, Defendants would withhold those individuals' identities and sufficiently describe the individuals on a privilege log. (R. Doc. 39–4 at 15).

On January 26, 2016, at 12:31 p.m., Plaintiff filed her motion to compel compliance with the Rule 45 subpoena in full. (R. Doc. 38).[2] Plaintiff argues that the information sought is relevant, limited in scope, and does not seek the production of confidential information. (R. Doc. 38–1 at 6–9). Plaintiff certifies that Air Products has been provided notice of the motion to compel as required by Rule 45(d)(2)(B)(i). (R. Doc. 38 at 2–3). Air Products has not filed an opposition to the instant motion or otherwise moved to quash the subpoena.

On February 1, 2016, Defendants filed their motion for protective order and modification of the subpoena. (R. Doc. 39). Defendants seek modification of the Rule 45 subpoena on the basis that the subpoena: "is overly broad and unduly burdensome; that it

demands the production of privileged and confidential information pertaining to Iris and its employees and/or clients; and that it is intended to cause annoyance embarrassment, and oppression of non-parties when the documents sought are available through other discovery methods." (R. Doc. 39 at 1). Defendants assert that the parties have reached "a series of agreements to modify the scope of the subpoena" and that the only issue left to be resolved "is whether counsel for Iris may redact the names of Iris employees (other than Plaintiff and Ms. Benitez) when irrelevant to Plaintiff's claims while providing a sufficient description of any such employees in a privilege log." (R. Doc. 39–1 at 1, 5).

Plaintiff rejects Defendants' proposed modifications to her subpoena and opposes Defendant's protective order motion. (R. Doc. 43 at 1). Specifically, Plaintiff insists that Defendants have failed to establish that there is good cause for the protective order (R. Doc. 43 at 1, 6), and Defendants' request for modification to the subpoena is unwarranted. (R. Doc. 43 at 1, 9). Plaintiff argues that Defendants' confidentiality concerns are contradicted by Leblanc's deposition testimony and that Defendants lack standing to assert that the subpoena of Air Products is overbroad and unduly burdensome. (R. Doc. 43 at 2–3).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within

---

**2.** It appears that Plaintiff's counsel was in the process of filing the instant motion to compel when defense counsel sent her email agreeing,

for the most part, to Plaintiff's concerns regarding Leblanc's emails concerning Benitez.

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ.P. 26(b)(1).[3] The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004).

## B. Analysis

### 1. Standing

The first issue the court must address is whether, and to what extent, Defendants have standing to challenge the Rule 45 subpoena served on the non-party Air Products. *See Rice v. Reliastar Life Ins. Co.*, No. 11–44, 2011 WL 5513181, at *1 (M.D.La. Nov. 10, 2011) ("The Court's first inquiry in ruling on a motion to quash a Rule 45 subpoena directed to a non-party, like the subpoenas at issue in this motion, is to determine whether the movant has standing to challenge the subpoena."). Because Defendants bring their motion pursuant to both Rule 26(c) and Rule 45(d), the court shall briefly discuss whether Defendants have proper standing pursuant to those rules.

Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45. *See Frazier v. RadioShack Corp.*, No. 10–855, 2012 WL 832285, at *1 (M.D.La. Mar. 12, 2012) ("[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights ..., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds."). Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n. 2 (E.D.Va.2012); *Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D.Fla.2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C.2005).

---

**3.** The current version of Rule 26(b)(1) became effective on December 1, 2015. The former version of Rule 26(b)(1) did not contain the "proportional to the needs of the case" language in defining the scope of discovery. The former version of the rule nevertheless provided that the district court must "limit the frequency or extent of discovery" if it determined that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(iii) (former version). For the purpose of the instant motions, the same result would follow regardless of which version of Rule 26 was applied.

While Defendants do not have standing pursuant to Rule 45(d) to modify or quash the subpoena on the basis of undue burden to Air Products, they do have standing pursuant to Rule 26(c)(1) to seek a limitation and/or modification of the scope of the subpoena.

### 2. The Scope and Manner of Production

▆ The subpoena requests two groups of information. (R. Doc. 38–2 at 4–5). The first request is for Leblanc's emails on the Air Products server between the dates of May 1, 2014 and October 12, 2014, that pertain to Iris and include references to Plaintiff or Benitez. The second request is for all of Leblanc's emails on the Air Products server between the dates September 1, 2014 and October 12, 2014, to and from certain email addresses used by three Iris board members. (R. Doc. 38–2).

Plaintiff's motion seeks enforcement of the subpoena as written. (R. Doc. 38–1 at 8). Plaintiff acknowledges in her motion, however, that she agreed to certain limitations to the scope of the subpoena and manner of production, including allowing Defendants to review Air Products' collection of emails for confidentiality and privilege; allowing Defendants to provide a detailed privilege log for information withheld on the basis of privilege and confidentiality; limiting the scope of Leblanc's emails referring to Benitez to those concerning "failure to hold staff accountable" emails (but requiring Defendants to identify any remaining emails concerning Benitez's work performance and termination on a privilege log); and limiting the dates of the Benitez-related emails to May 1, 2014 through September 10, 2014. (R. Doc. 38–1 at 4–6).

Defendants object to the scope of the subpoena as written, claiming it threatens disclosure of confidential business and client information, and seek to narrow the scope of documents to be produced. (R. Doc. 39–1 at 3–4). Defendants argue that the parties have made several agreements regarding the scope and manner of production of the documents, and the only unresolved issue is whether Defendants may redact the names of employees and describe those employees in a privilege log. (R. Doc. 39–1 at 4–5).

The court will modify and/or limit the scope of the subpoena and manner of production, to a certain extent, to conform to the agreements reached by the parties in their negotiations. Considering the nature of the items requested and due to the fact that Air Products would not be able to adequately limit the production as the issues are unrelated to its operation or Wascome's employment with Air Products, the court finds the parties' agreements provide reasonable accommodations and modifications to the subpoena as written. First, as set forth in the subpoena, Air Products may withhold any emails that pertain to its business or operations as unresponsive to the subpoena. Second, the court will allow for the production of any responsive documents to be first made to Defendants so that they can perform a privilege and/or confidentiality review of the emails prior to production to Plaintiff. Third, the court will limit the dates of emails solely related to Benitez to May 1, 2014 through September 10, 2014. Fourth, the court will limit the subject matter of emails solely related to Benitez to those concerning complaints about Benitez's accommodations of Plaintiff, failure to hold staff accountable, her work performance, and her termination.

Finally, even the above limitations would require the production of information beyond the scope of discovery. For example, paragraph 2 of the subpoena requests "all emails" between Danna Leblanc and various email accounts of other board members during the time period of September 1, 2014 to October 12, 2014. This request is otherwise unlimited in scope. The court will further limit any production made to Plaintiff under paragraph 2 to preclude emails that only contain confidential business or client information, privileged material, and any material that makes no mention of Plaintiff or Benitez (as limited in the preceding paragraph) or is unrelated to the claims and defenses in this action.

Defendants also argue that the subpoena is needlessly overbroad since Plaintiff previously requested these same emails from Defendants and that production is still pending. (R. Doc. 39–1 at 10). In response, Plaintiff claims that the production Defendants reference concerns the disclosure of additional

emails not produced in response to document requests that were identified by Leblanc in her deposition on January 19, 2016 and still have not been produced. (R. Doc. 43 at 3; R. Doc. 51–1 at 10). The court will not limit the scope of production on this basis. Plaintiff is seeking email communications located on Air Products' server. While some or even many of the emails may be duplicative or emails to be produced by Defendants, there may be responsive emails that are outside of Defendants' custody, possession, or control.

Defendants request that a new protective order be issued to govern confidential information in the foregoing emails. (R. Doc. 39–1 at 4). Defendants claim that the release of these emails to Plaintiff could result in the release of confidential business information and sensitive private information of domestic violence survivors and Iris employees. (R. Doc. 39–1 at 7). While preventing the public release of this information is appropriate, the court finds this concern unwarranted. The protective order already in place in this litigation contains a provision specifically addressing protected material subpoenaed or ordered produced in litigation, and sets the requirements for the receiving party to notify both the designating party and party who caused the subpoena that requested information is covered by the protective order. (R. Doc. 29 at 12–13). Additionally, Leblanc has testified in her deposition that her emails do not contain confidential and/or client information. (R. Doc. 43–1 at 2–3). That said, because the production is being made through Defendants, the terms of the protective order apply to any documents identified as containing "confidential information." Plaintiff is advised that any document produced through Defendants in accordance with this order, regardless of whether the original source of the document is Air Products, is covered by the court's protective order if appropriately designated by Defendants.

As agreed upon by the parties, Defendants shall have the opportunity to review all emails produced by Air Products for privilege, confidentiality, and privacy concerns. To the extent Defendants assert any privilege, including the attorney-client privilege and/or work product immunity, Defendants may withhold and or redact the emails and provide the information on a privilege log. Considering that a protective order is in place governing "confidential information," there is no need for Defendants to withhold information on the basis of confidentiality and/or privacy. To the extent Defendants identify confidential or private information in Leblanc's emails as provided by Air Products, they may identify the information as "confidential information" as defined in the court's protective order and the "confidential information" shall be protected pursuant to that protective order.

The court will not, however, provide a modified date for compliance at this time. The court must ensure that reasonable steps are taken to avoid imposing undue burden or expense on Air Products. *See* Fed. R. Civ. P. 45(d)(1). Other than Air Products' objections submitted on January 12, 2016 (R. Doc. 38–4), there is nothing in the record detailing the actual time, burden, or costs involved in searching for responsive documents in Leblanc's email account(s). Air Products has not identified whether a preliminary search for responsive documents has been conducted and whether a number of potentially responsive emails has been determined based on such a preliminary search. Air Products references the potential need for a third party forensics firm in order to preserve metadata, but overlooks the alternative provided in the subpoena permitting production in other electronic format or even hard copies. Accordingly, the court will provide the parties until March 28, 2016 to confer with Air Products regarding these issues and to file a joint report to the undersigned regarding the anticipated time required for collecting, reviewing, and producing responsive emails, and the specific justifications for such.

## III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Modify Subpoena *Duces Tecum* and for Protective Order (R. Doc. 39) is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion to Compel Subpoena *Duces Tecum* Production (R. Doc. 38) is **GRANT-**

ED IN PART AND DENIED IN PART. The court will defer ruling on the manner and date of production until after the parties confer with Air Products regarding this Order and submit a joint report to the undersigned regarding the time required for collecting, reviewing, and producing responsive emails. Nothing in this Order shall preclude the court from further modifying the manner and scope of production in response to the subpoena after review of the parties' joint report to be filed on March 28, 2016.

IT IS FURTHER ORDERED that, pursuant to Rule 26(c), Plaintiff's subpoena to Air Products shall be limited and/or modified as follows:

(1) As set forth in the subpoena, Air Products may withhold any emails that pertain to its business or operations as unresponsive to the subpoena;

(2) The temporal scope of paragraph 1 of the subpoena shall be limited to the time period of May 1, 2014 to September 10, 2014 for emails pertaining to Executive Director Judy Benitez.[4] All other emails are limited to the time period of May 1, 2014 to October 12, 2014.

(3) To the extent any emails are retrieved by Air Products that mention Judy Benitez with no mention of Plaintiff, those emails must be produced only to the extent they concern Benitez's accommodations of plaintiff, failure to hold staff accountable, her work performance, and her termination.

(4) Any email communications sent or received by Leblanc to or from Wascome, Folks, and/or Melville from time period of September 1, 2014 to October 12, 2014, need only be produced to the extent they pertain to the Plaintiff or Benitez (as limited in the immediate preceding paragraph), or are otherwise related to the claims and defenses in this action.

(5) Responsive emails must be produced with all responsive attachments, but may be produced in either native format, PDFs, or printouts, whichever is more cost effective and convenient to Air Products.

IT IS FURTHER ORDERED that the parties shall submit a joint report on or before **March 28, 2016,** certifying that their counsel have met and conferred with counsel for Air Products regarding the contents of this Order and the court's modifications to the subpoena and the manner of production.

The joint report shall provide the total number of emails for the dates May 1, 2014 through October 12, 2014, that were sent from or to the following email addresses: (1) leblandl@airproducts.com; (2) leblandl@apci.com; and/or (3) any other email address used by Danna Leblanc in the course of her employment with Air Products, that include any of the following search terms:

- Violence Center
- Iris
- Sarah
- Bounds
- Director of Operations
- Judy
- Benitez
- Executive Director

Air Products shall also identify, for each of the search terms, the number of emails located.

The joint report shall, during the time period September 1, 2014 to October 12, 2014, for the following email addresses: (1) leblandl@airproducts.com; (2) leblandl@apci.com; and/or (3) any other email address used by Danna Leblanc in the course of her employment with Air Products, provide the total number of emails sent to or received from the following email addresses: (1) awascome@gmail.com; (2) HeatherFolks@stopguarantee.com; (3) HeatherFolks@yahoo.com; and (4) jude.melville@b1banl.com.

The joint report shall identify a date certain by which Air Products can search for and collect the emails, review those emails for discussions of Air Product's business or operations that are unresponsive to the subpoena, and provide emails that do not include Air Product's business or operations to Defendants for further review.

The joint report shall also identify a date certain by which Defendants can review the

4. This would include the terms "Judy," "Benitez," and/or "Executive Director."

emails provided for Air Products for responsiveness, confidentiality, and/or privilege, and provide all responsive emails to Plaintiff with any accompanying privilege log.

**IT IS FURTHER ORDERED** that Plaintiff shall provide a copy of this Order to counsel for Air Products within one business day of its issuance.